IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DEBRA RUTH HENDERSON** )<br>      **ID #1790199** )<br>            Petitioner, )<br>vs. )<br> )<br>**LORIE DAVIS,**[1] **Director,** )<br>**Texas Department of Criminal Justice,** )<br>**Correctional Institutions Division,** )<br>            Respondent. ) | No. 3:15-CV-2343-D (BH)<br><br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings, evidence, and applicable law, the petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I.   BACKGROUND**

Debra Ruth Henderson (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), challenges her conviction for murder. The respondent is Lorie Davis, the Director of TDCJ-CID (Respondent).

**A.   Factual and Procedural History**

On May 18, 2012, Petitioner was convicted of first degree murder in Cause No. 36090CR in the 40th District Court in Ellis County, Texas, and sentenced to life imprisonment. (doc. 3 at 2; doc. 10-12 at 148.[2]) The appellate court summarized the evidence at trial as follows:

>   Marian Parsons was reported missing by Robert Sterling, the man with whom

---

   [1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

   [2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

she was living on December 3, 2010. Parsons had not been seen since December 1, 2010, but Sterling thought she had gone to stay with friends because they were having problems. Parsons' ex-husband had spoken with Parsons on the afternoon of December 1, and Parsons told him she had to go help Henderson retrieve an ATV that was stuck in a pasture.

Debra and Bobby Henderson were neighbors of Sterling and Parsons and were leasing Sterling's land to run cattle. Debra Henderson and Parsons were friends. Parsons had loaned Henderson $2,700 in October of 2010. Henderson came over to Sterling's house when the investigation started surrounding Parsons' disappearance and Henderson denied having any knowledge of Parsons' whereabouts.

Within two days of Parsons' disappearance, Henderson was seen on video unsuccessfully attempting to use Parsons' ATM card and successfully using Parsons' credit card to make purchases and get cash withdrawals at Wal–Mart. Henderson admitted stealing the cards but claimed that she did it while they were at breakfast on the morning of December 1. Henderson had been desperate for money and in November and December of 2010, she unsuccessfully attempted to borrow $5,000 from two acquaintances of the Hendersons without Bobby's knowledge. Unbeknownst to Bobby, in December of 2010 the Hendersons were three months behind on their mortgage.

On March 19, 2011, Bobby Henderson found a human skull near a fence on his property. After a search of the surrounding areas, Parsons' remains were located in a ravine nearby. The remains were buried under a large piece of sheet metal that weighed approximately 68 pounds, cement blocks, trash, and old tires. Parts of Parsons' body were missing and the remains had been heavily scavenged by animals.

A dive team discovered a Hi–Point nine millimeter handgun in a private pond approximately seventy feet from where Parsons' remains were discovered. The gun was purchased by Bobby Henderson and was reported stolen in April of 2010. The gun was jammed by a bullet and had six other bullets in it when it was discovered.

The medical examiner testified that the remains had been highly scavenged by animals and Parsons' organs, one of her entire arms, and her other hand were completely missing. The head was detached and the skull found by Bobby was identified as that of Parsons from dental records. Other bones were found in the nearby fields. Parsons had multiple broken ribs but the examiner could not determine when they were broken. However, the bones did not show signs of healing and were therefore likely fractured at the time of death or thereafter. There were two round abdominal defects which could have been caused by stabbing or gunshot wounds. Toxicology testing conducted on muscle tissue found ketamine, a drug commonly used to quickly anesthetize animals, in her system, which was

>highly suspicious to the examiner. Ketamine is rarely used on or by humans because it causes unpleasant hallucinations and side effects, but could be lethal if given in a large dose. The examiner determined the cause of death to be homicide but the means of death was unknown due to the decomposition.
>
>A forensic anthropologist who then examined the remains testified that he believed the abdominal defects, which consisted of one 11–millimeter round wound and one oblong wound measuring 11 millimeters by 17 millimeters, were an entry and exit gunshot wound. The anthropologist's examination showed smooth edges to those wounds and no signs of scavenging by animals or insects, which would be evidenced by tooth marks and rough edges. The anthropologist also opined that the broken ribs could not have been caused by a wheel running over the body because of the pattern of the breaks and the total lack of damage to the bones in the spinal column. Further, the anthropologist testified that a fall could not have caused the rib fractures. The cause of death by the anthropologist was determined to be homicidal violence and gunshot injury could not be excluded as the cause of death.
>
>During the time prior to the discovery of Parsons' body, Henderson made several statements to law enforcement which were recorded both in writing and on video. In her statement made in late December, Henderson attempted to shift the focus of the investigation to Sterling, but she did admit to stealing and using the debit and credit cards. On March 19, after Parsons' skull was found, Henderson made another statement but only described finding the skull with her husband. The next day Henderson admitted that she had accidentally killed Parsons by running over her with the ATV they were riding in after Parsons fell out of it. Henderson contended that she panicked and hid the body in the ravine by covering it with the sheet metal and a tire. Henderson and an investigator later met at the scene and Henderson attempted to describe and demonstrate what had occurred; however, law enforcement was unable to recreate what Henderson had described and believed it to be impossible. After the gun was discovered, Henderson admitted throwing the gun into the pond because it was jammed but contended that she had done that prior to Parsons' death.

*Henderson v. State*, 2013 WL 5290120 at *2-3.

The Tenth District Court of Appeals in Waco, Texas, affirmed the conviction and sentence in an unpublished opinion on September 19, 2013. *Henderson v. State*, No. 10-12-00211-CR, 2013 WL 5290120 (Tex. App.–Waco, Sept. 19, 2013, pet. ref'd) (mem. op.). On February 5, 2014, the Texas Court of Criminal Appeals refused her petition for discretionary review. *Henderson v. State*, No. PD-1483-13 (Tex. Crim. App. Feb. 5, 2014). Petitioner filed a state application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure on March 10, 2015.

3

(doc. 3 at 4; doc. 11-9 at 145.) On May 6, 2015, the Texas Court of Criminal Appeals denied her application without a written order and without a hearing based on the findings of the trial court. (Pet. at 4; doc 11-7.)

**B.    Substantive Claims**

In her petition, which is postmarked July 14, 2015,[3] Petitioner raises two grounds for relief:

(1) Counsel provided ineffective assistance by failing to file a suppression motion based upon a violation of her *Miranda* rights; and

(2) Counsel provided ineffective assistance by failing to investigate exculpatory witnesses.

(doc. 3 at 6.)

## II.  STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because the petition in this case was filed after its effective date, the Act applies. Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1).

**A.    Calculation of One-Year Period**

The one-year period is calculated from the latest of either:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created

---

[3] The petition does not indicate when Petitioner placed it in the prison mailing system, but the envelope in which it was mailed is postmarked July 14, 2015. (doc. 3 at 10.)

> by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See id.* § 2244(d)(1)(A)-(D).

Here, Petitioner challenges the ineffectiveness of counsel prior to trial. The federal statute of limitations began running when the trial court's judgment adjudicating guilt became final by the conclusion of direct review or the expiration of the time for seeking such review under § 2244(d)(1)(A). The petition for discretionary review was refused by the Texas Court of Criminal Appeals on February 5, 2014. *Henderson v. State*, No. PD-1483-13. Because Petitioner did not file a writ of certiorari with the United States Supreme Court, her conviction became final for purposes of the one-year limitation period when the time for seeking further review had expired, on May 6, 2014.[4] *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir. 1998) (citing *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994)). Accordingly, she had until May 6, 2015 to file a federal petition of habeas corpus absent any tolling of the statute of limitations. Petitioner filed her § 2254 petition at the latest on July 14, 2015.[5] A literal application of § 2244(d)(1)(A) renders the § 2254 petition untimely.

---

[4] Although the parties agree that May 5, 2014, was the day that the judgment became final, the ninetieth day is actually May 6. *See Flanagan v. Johnson*, 154 F.3d 196, 201-02 (5th Cir. 1998) (applying Federal Rule of Civil Procedure 6(a) and not counting the day of an act or event in computing the AEDPA one-year limitation period).

[5] As noted, Petitioner did not state when she placed her § 2254 petition in the prison mail system for purposes of the "mailbox rule", so it is deemed filed on the postmark date. *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (pro se prisoner's habeas corpus petition is constructively filed for purposes of AEDPA when the prisoner delivers the papers to prison authorities for mailing to the district court).

**B.    Statutory Tolling**

Under § 2244(d)(2), Congress carved out an exception to the one-year limitation period to file a federal habeas petition. Section 2244(d)(2) states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The one-year limitations period was therefore tolled while Petitioner's state habeas application was pending. *See also Henderson v. Johnson*, 1 F.Supp.2d 650, 652 (N.D. Tex. 1998) (holding that the filing of a state habeas application stops the one-year period until the ruling on the state application).

In this case, Petitioner filed a state writ of habeas corpus on March 10, 2015. (doc. 11-9 at 145.) Her state application was denied without written order or hearing based on the findings of the trial court on May 6, 2015. (doc. 11-7.) Under § 2244(d)(2), the one-year limitations period was tolled for the fifty-seven days that her conviction was under state collateral review, so she had until July 2, 2015, to file her federal habeas petition. The statutory tolling provision does not save the federal petition filed on July 14, 2015.

**C.    Equitable Tolling**

AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 560 U.S. 631 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298

(5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented a timely filing. *Holland*, 560 U.S. at 648 (*citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

Here, Petitioner has not alleged that she was actively misled by the government or prevented from asserting her rights. In fact, she expressly states that she "has not raised a claim that equitable tolling should apply." (doc. 14 at 1.) Instead, she argues that "the Suspension Clause is violated by the AEDPA's one-year statute of limitations on habeas corpus petitions." (*Id.*)

The Fifth Circuit has directly addressed this argument. In *Molo v. Johnson*, 207 F.3d 773 (5th Cir. 2000), the Fifth Circuit held that the "1-year limitations period of the AEDPA does not violate the Suspension Clause unless it renders the habeas remedy inadequate or ineffective to test the legality of detention." *Molo*, 207 F.3d at 775 (internal quotations omitted). *Turner v. Johnson*, 177 F.3d 390 (5th Cir. 1999), to which Petitioner specifically refers to in her petition, stands for the same proposition. Petitioner must therefore make a factual showing as to how the limitations period made the habeas remedy inadequate or ineffective. To meet her burden, she only makes general allegations of ineffective assistance of counsel. (doc. 3 at 6; doc. 14 at 3.) Whether she had

7

effective assistance of counsel is not relevant for purposes of equitable tolling of the AEDPA's statute of limitations, however. *Molo*, 207 F.3d at 775 ("Whether Molo had effective assistance of counsel on direct appeal in state court is not relevant to the question of tolling the AEDPA's statute of limitations.") Accordingly, Petitioner has not met her burden to show that she is entitled to equitable tolling, and her habeas petition is barred by the statute of limitations.

### III.  MERITS

To the extent that Petitioner's claims are not time-barred, she is also not entitled to relief on the merits.

**A.  AEDPA Standard**

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.    Ineffective Assistance of Counsel**

Petitioner contends that counsel was ineffective for failing to (1) file a suppression motion based upon a violation of her *Miranda* rights because she was questioned by police after she had requested counsel, and (2) investigate exculpatory witnesses. (doc. 3 at 6.)

9

Under the clearly established federal law, a defendant alleging ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 700. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n. 14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (quoting *Strickland*, 466 U.S. at 690)). This standard not only gives trial counsel the benefit of the doubt, but affirmatively entertains the range of possible reasons counsel may have had for proceeding as they did. *Id.* at 196.

To establish prejudice, a petitioner must show that there is a reasonable probability, sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n. 17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the

10

alleged errors of counsel. *Strickland*, 466 U.S. at 695–96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 526 U.S. 86, 101 (2011). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, ––U.S. ––, ––, 134 S.Ct. 10, 13 (2013).

### 1. *Suppression Motion*

Petitioner claims that counsel was ineffective for failing to file a suppression motion because she was interrogated by law enforcement officials after her request for counsel was denied, and the statements she made were incorrectly introduced at trial. (doc. 3 at 6; doc. 14 at 5.)

As recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment's "prohibition against compelled self-incrimination require[s] that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The accused, however, may "validly waive his rights and respond to interrogation" after receiving his *Miranda* warnings. *Id.* at 484. An individual accused of a crime who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. A suspect's request for counsel must be clear and unequivocal, however. *Davis v. United States*, 512 U.S. 452, 459 (1994). A statement such as "maybe I should talk to a lawyer" is not a clear assertion for request of counsel. *Id.* at 462. *Miranda* "and its progeny in [the United States Supreme] Court govern the admissibility of

11

statements made during custodial interrogation in both state and federal courts." *Dickerson v. United States*, 530 U.S. 428, 432 (2000).

Petitioner fails to identify which statements she made that should have been suppressed. She also never specifically identifies when she asked for counsel, or how she asked for counsel. She spoke with police on various occasions but never specifies when she made a request. The record reflects that each time Petitioner was in custody, she was given her *Miranda* rights. She never requested a lawyer. Her only statement relating to a lawyer was, "You should never do an interview without a lawyer . . . Am I wrong?" (doc. 13 - State's Exhibit No. 114 ( DVD) Debra2 file at 27:30.) This statement is not a clear assertion of a request for counsel. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### 2. *Exculpatory Witnesses*

Petitioner claims that counsel was ineffective for failing to investigate exculpatory witnesses. (doc. 3 at 6.)

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d at 538.

Petitioner has not identified any exculpatory witness that counsel should have investigated, discovered, or presented. She has not shown the substance of the testimony of any such witnesses

12

or shown that such testimony would have been favorable. *See Day v. Quarterman*, 566 F.3d at 538. She has not shown that the state court's rejection of this claim was unreasonable.

## IV. RECOMMENDATION

The petition for habeas corpus relief should be **DENIED** with prejudice as barred by the statute of limitations, and alternatively, for lack of merit.

**SO RECOMMENDED** on this 15th day of March, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE